Melissa Anne Hailey
NM State Bar No. 25817
WildEarth Guardians
1536 Wynkoop Street, Suite 301
Denver, CO 80202
Tel: (505) 988-9126 ext. 1159
Email: mhailey@wildearthguardians.org

*Pro hac vice application submitted herewith*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### TUCSON DIVISION

_____
                    )
WILDEARTH GUARDIANS,      )      No._____
                    )
      Plaintiff,         )
                    )      COMPLAINT FOR
vs.                       )      DECLARATORY AND
                    )      INJUNCTIVE RELIEF
KEN SALAZAR, U.S. Secretary of the Interior, )
sued in his official capacity,     )
                    )
      Defendant.       )
_____ )

**INTRODUCTION**

1.      Plaintiff, WildEarth Guardians ("Guardians") brings this action against Defendant, Ken Salazar, U.S. Secretary of the Interior ("the Secretary"), in his official capacity.  Guardians challenges the Secretary's November 9, 2009 decision, 74 Fed. Reg. 57804, 57821 (2009), in which the Secretary concluded that listing of the New Mexico meadow jumping mouse (*Zapus hudsonius luteus*) ("Jumping Mouse") as an endangered or threatened species pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 et seq., is warranted, but precluded, by higher priority listing actions and that the Secretary is making expeditious progress to reduce his backlog of chronically delayed listing actions.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (U.S. as a defendant), 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief), and 16 U.S.C. §§ 1540(c) and (g) (action arising under the ESA and citizen suit provision).

3.      As required by ESA § 11(g), 16 U.S.C. § 1540(g), Guardians furnished the Secretary with written notice of the violations alleged in this Complaint more than 60 days ago.  The Secretary has acknowledged his receipt of this notice.  An actual and present controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

4.      Venue properly lies in this judicial district pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e).  The Jumping Mouse resides in this judicial district, both Guardians and the Secretary maintain offices in this district, and a substantial portion of the events or omissions giving rise to Guardians' claims occurred within this district.

**PARTIES**

5.      Plaintiff, WILDEARTH GUARDIANS ("Guardians") sues on behalf of itself and its adversely affected members.  Guardians works to protect and restore wildlife and wild lands in the American West.  Guardians has more than 4,500 members that live

1 throughout the country, including the range of the Jumping Mouse.

2       6.     Guardians filed a petition requesting the Secretary to list the Jumping Mouse

3 under the ESA in October 2008.  Guardians invested significant resources into preparing

4 this listing petition.

5       7.     Guardians' members and staff frequently use and enjoy the Jumping Mouse

6 and its habitat for recreational, aesthetic, professional, and scientific activities and will

7 continue to do so.  Guardians and its members have a substantial interest in the

8 conservation of the Jumping Mouse, and are adversely affected by the Secretary's failure to

9 comply with the ESA.  The requested relief will redress Guardians' and its members'

10 injuries.

11       8.     Defendant, KEN SALAZAR ("the Secretary"), is the Secretary of the United

12 States Department of the Interior.  As such, he has ultimate responsibility for

13 implementation of the ESA.  He is sued in his official capacity.  In this case, the Secretary

14 has delegated his responsibilities under the ESA to the U.S. Fish and Wildlife Service

15 ("FWS"), an agency within the U.S. Department of the Interior.

16 **STATUTORY FRAMEWORK OF THE ENDANGERED SPECIES ACT**

17       9.     The purpose of the ESA is to "provide a means whereby the ecosystems upon

18 which endangered species and threatened species depend may be conserved, [and] to

19 provide a program for the conservation of such endangered and threatened species …."  16

20 U.S.C. § 1531(b).  The ESA defines conservation as "the use of all methods and procedures

21 which are necessary to bring any endangered species or threatened species to the point at

22 which the measures provided pursuant to [the ESA] are no longer necessary."  Id. §

23 1532(3).  Accordingly, the ultimate goal of the ESA is not only to temporarily save

24 endangered and threatened species from extinction, but also to recover these species to the

25 point where they are no longer in danger of extinction, and thus no longer in need of ESA

26 protection.

27       10.    The protective provisions of the ESA are not triggered for imperiled species,

28 however, until after such species are officially "listed" as either "threatened" or

2

"endangered."  16 U.S.C. § 1533.

11.    A species is listed as "endangered" if it is "in danger of extinction throughout all or a significant portion of its range."  16 U.S.C. § 1532(6).  A species is listed as "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  Id. § 1532(20).  A "species" is defined to include "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."  Id. § 1532(16).

12.    The Secretary is required to list as either threatened or endangered any species facing extinction due to any one, or any combination of, the following five factors:

(A)    the present or threatened destruction, modification, or curtailment of the species' habitat or range;

(B)    overutilization for commercial, recreational, scientific, or educational purposes;

(C)    disease or predation;

(D)    the inadequacy of existing regulatory mechanisms; or

(E)    other natural or manmade factors affecting the species' continued existence.

16 U.S.C. §§ 1533(a)(1)(A)-(E).

13.    The Secretary's decision whether to list a species is limited solely to consideration of these five factors.  In considering these factors, the Secretary must use only "the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination."  50 C.F.R. § 424.11(b).

14.    Once a species is listed, the ESA provides strong legal protections to encourage the species' recovery.  The ESA requires the Secretary to designate critical habitat for all threatened and endangered species concurrently with their listing and to subsequently develop recovery plans for such species.  See 16 U.S.C. §§ 1533(a)(3) and (f).

The ESA also requires that all federal agencies "carry out programs for the conservation" of threatened and endangered species and consult with the Secretary in order to ensure that their actions are "not likely to jeopardize the continued existence" of such species or "result in the destruction or adverse modification" of their critical habitat. Id. §§ 1536(a)(1) and (2). Additionally, the ESA prohibits any person from "taking" a threatened or endangered species. Id. § 1538(a)(1)(B); 50 C.F.R. §§ 17.21 and 17.31. To "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

15. Any interested person may file a petition with the Secretary to list a species as threatened or endangered under the ESA. See 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b).

16. Upon receiving a listing petition, the Secretary must "to the maximum extent practicable," determine within 90-days whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). "Substantial information" is that "amount of information that would lead a reasonable person to believe that the measure proposed in the petition maybe warranted." 50 C.F.R. § 424.14(b). This initial determination is known as a "90-day finding."

17. If the Secretary makes a positive 90-day finding, then the Secretary must commence a thorough status review of the species. See 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(3). After the status review, the Secretary must make a determination as to whether listing the species as threatened or endangered is "warranted," "not warranted," or "warranted, but precluded." 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. 424.14(b)(3). This determination is known as a "12-month finding" because it must be made within 12-months of the Secretary's original receipt of the petition. Id.

18. If the Secretary finds that listing the species under the ESA is warranted, he must publish a proposed listing regulation in the Federal Register. See 16 U.S.C. § 1533(b)(3)(B)(ii). Within one year of this publication, the Secretary is required to render a

4

final determination on the proposal.  <u>See id.</u> § 1533(b)(6)(A).  At such time, the Secretary must take one of the following actions: list the species; withdraw the proposal; or, if there is substantial disagreement about scientific data, delay a final determination for up to six months to solicit more scientific information.  <u>See id.</u> §§ 1533(b)(6)(A)(i)(III) and (b)(6)(B)(i).

19.    The Secretary may avoid publishing a proposed listing for a species that he concludes warrants listing, by making a "warranted, but precluded" finding.  16 U.S.C. § 1533(b)(3)(B)(iii).  To make a "warranted, but precluded" finding the Secretary must determine that:

(I)    the immediate proposal and timely promulgation of a final regulation implementing the petitioned action … is precluded by pending proposals to determine whether any species is an endangered species or a threatened species; and

(II)    expeditious progress is being made to add qualified species to either of the lists [of threatened or endangered species] and to remove from such lists species for which the protections of this Act are no longer necessary.

<u>Id.</u> §§ 1533(b)(3)(B)(iii)(I) and (II).

20.    The Secretary must publish his "warranted, but precluded" finding in the Federal Register together with a description and evaluation of the reasons and data on which the finding is based.  <u>See</u> 16 U.S.C. § 1533(b)(3)(B)(iii).  "Warranted, but precluded" findings are included in the Secretary's Candidate Notice of Review ("CNOR"), a Federal Register notice in which the Secretary presents an updated list of those plant and animal species he considers to be "candidates" for listing under the ESA.

21.    "A candidate species is one for which [the Secretary] has on file sufficient information on biological vulnerability and threats to support issuance of a proposed rule to list as endangered or threatened, but for which preparation and publication of a proposal is precluded by higher-priority listing actions."  74 Fed. Reg. 57804 (2009 CNOR).

1    Although the Secretary acknowledges that the listing of all such "candidates" is

2    "warranted" based on the best available data – i.e., that such species need the protections

3    of the ESA in order to avoid extinction – candidate species do not receive the extensive

4    safeguards otherwise afforded by the ESA.

5          22.     The Secretary must re-examine each of his "warranted, but precluded"

6    findings every 12 months. See 16 U.S.C. § 1533(b)(3)(C)(i). The Secretary reports such

7    findings on these re-examinations in the annual CNORs.

8          23.     A "warranted, but precluded" finding is subject to judicial review. 16 U.S.C.

9    § 1533(b)(3)(C)(ii).

10                           **STATEMENT OF FACTS**



11-21         24.     The New Mexico meadow jumping mouse ("Jumping Mouse")[1] is a type of meadow jumping mouse that occurs only in Arizona, Colorado, and New Mexico. It is geographically isolated from other types of jumping mice. It is confined to five isolated mountain ranges and the Rio Grande Valley. It occurs in only 16 small and fragmented locations. The Jumping Mouse requires streamside areas with permanent water sources and tall and dense

22    sedges, grasses, and forbs.

23          25.     The Jumping Mouse is orangish with a whitish underside. It has large, five-

24    toed hind feet, smaller front feet with four toes, and a long tail. It is approximately 8.4

25    inches long, with its tail comprising five inches of its total length. Adult mice are known to

26    jump up to three feet. The Jumping Mouse also swims, and its large feet (approximately

27    1.2 inches) may assist it with swimming.

28    _____

[1] Photo courtesy of J. Frey.

26.     Scientifically, the Jumping Mouse is an indicator species.  This means that its presence or absence from an area reflects the area's health.  The Jumping Mouse serves an ecosystem indicator function due to its dependence on lush and intact streamside habitats, including those created by beavers.  Streamside areas are invaluable for wildlife in the western United States.  Indeed, 75 to 80 percent of western wildlife species depend on these areas to meet some of their biological requirements.

27.     The Jumping Mouse has one of the longest hibernation periods of any type of Meadow Jumping Mouse or other mammal.  The Jumping Mouse's extensive hibernation period makes its pre-hibernation food requirements considerable.  During pre-hibernation, dense, diverse riparian vegetation provides the Jumping Mouse with the necessary forage needed to accumulate the fat reserves it will use during hibernation.  Tall vegetation also protects the Jumping Mouse from predators, allows it to avoid aggression from other small mammal species, and regulates habitat features such as temperature and moisture.

28.     The Jumping Mouse can be long-lived for a small mammal.  Jumping Mice can reach ages of up to three years.  However, most Mice in the wild die in their first year.  Only about nine percent of those that live past their first year make it to their third year.  Summer survival of Jumping Mice is low.  Thus, pre-hibernation fattening and high-quality hibernation habitat are key to the Jumping Mouse's survival.  The Jumping Mouse also has a relatively low rate of reproduction.  It produces only one litter per year in its montane habitat, and perhaps two litters per year in the Rio Grande Valley.  The litter size of a Jumping Mouse is approximately three to four young.

29.     Historically, there were at least 103 locations where the Jumping Mouse occurred.  Eight of the 103 locations have not been surveyed since the early to mid 1990s.

30.     The Jumping Mouse is now known to occur at only seven locations in Arizona and nine locations in New Mexico.  One of the New Mexico locations extends into southern Colorado.  Of these 16 locations, eight measure only a few acres in size and are likely contain very small populations.

31.     Based on current surveys, the Jumping Mouse has disappeared from

7

1   approximately 85 percent of the sites where it historically occurred.

2          32.     The "drastic decline" in Jumping Mouse numbers and range has threatened

3   the species' survival.  74 Fed. Reg. at 57821 (2009 CNOR).  The Secretary has determined

4   that the Jumping Mouse faces "imminent" threats of a "high magnitude" from domestic

5   livestock grazing, water use and management, highway reconstruction, development,

6   beaver removal, and recreation.  Id.  These threats affect the survival of the Jumping Mouse

7   in all but two of its 16 existing locations.  Id.

8          33.     On October 9, 2008, Guardians petitioned the Secretary to list the Jumping

9   Mouse as either a threatened or endangered species under the ESA.  Guardians' petition

10  included a request for emergency listing.  At the time Guardians submitted its petition to list

11  the Jumping Mouse, the Jumping Mouse was already on the Secretary's list of candidate

12  species, which "warranted" listing under the ESA, but were "precluded" by "other higher-

13  priority listing actions."  72 Fed. Reg. 69034, 69036 and 69098 (2007) ("2007 CNOR").

14         34.     The Secretary made his 90-day and 12-month findings on Guardians' petition

15  to list the Jumping Mouse through the 2008 CNOR, wherein he determined that the taxon

16  remained "warranted, but precluded."  See 73 Fed. Reg. 75176, 75185 and 75191 (2008)

17  ("2008 CNOR").

18         35.     The Secretary renewed his "warranted, but precluded" finding for the

19  Jumping Mouse in the 2009 CNOR.  See 74 Fed. Reg. at 57805, 57821 and 57866; Center

20  for Biological Diversity v. Kempthorne, 466 F.3d 1098, 1103 (9th Cir.2006) (CNOR

21  findings "renew" prior listing findings).  In so doing, the Secretary again acknowledged that

22  the Jumping Mouse is in need of ESA protections and that this species' listing is in fact a

23  "high priority."  74 Fed. Reg. at 57805 and 57821.  Indeed, the Secretary assigned the

24  Jumping Mouse a Listing Priority Number ("LPN") of 3, a ranking that denotes "high

25  magnitude, imminent threats" – the most extreme level of imperilment any subspecies can

26  face.  See 74 Fed. Reg. at 57805; 48 Fed. Reg. 43098, 43102 (1983) (guidance for assigning

27  an LPN to each candidate species).[2]  Nonetheless, the Secretary determined that no

28  _____
    [2] Note that the ESA makes no distinction between the relative merits of protecting full

8

1   emergency listing of the Jumping Mouse was necessary and that any listing of the Jumping

2   Mouse was still "warranted, but precluded" by higher listing priorities.  74 Fed. Reg. at

3   57866.

4       36.     As required by 16 U.S.C. § 1533(b)(3)(B)(iii)(I), the Secretary's 2009

5   "warranted, but precluded" finding for the Jumping Mouse was based in part on the

6   assertion that he was working on "higher priority listing actions."  74 Fed. Reg. at 57804.

7   In spite of this finding of "higher priorities," the Secretary took few listing actions in 2009

8   on species deemed by him to be more imperiled than the Jumping Mouse.  In 2009, the

9   Southwest Region of FWS – that Regional Office responsible for ESA listing decisions on

10  species occurring within Arizona, New Mexico, Oklahoma, and Texas – took *no* listing

11  actions on species deemed by the Secretary to be more imperiled than the Jumping Mouse.

12  Indeed, FWS's Southwest Regional Office has failed to list a species with a priority ranking

13  of LPN 1 through LPN 3 since 2005.  See 70 Fed. Reg. 66664 (2005) (FWS final rule

14  listing Gila chub (*Gila intermedia*) as endangered with critical habitat).

15      37.     As required by 16 U.S.C. § 1533(b)(3)(B)(iii)(II), the Secretary's 2009

16  "warranted, but precluded" finding for the Jumping Mouse was based in part on the

17  assertion that he had made "expeditious progress" in adding other species to the lists of

18  threatened and endangered species in fiscal year 2009.  See 74 Fed. Reg. at 57814-57819.

19  In spite of this finding of "expeditious progress," the Secretary has listed only one new

20  species in the continental United States since the current administration took office on

21  January 20, 2009.  See 74 Fed. Reg. 52014 (2009) (FWS final rule listing slickspot

22  peppergrass (*Lepidium papilliferum*) as threatened species without critical habitat).  The

23  Southwest Region of FWS has listed *no* new species of *any* LPN ranking since November

24  2, 2005.  See 70 Fed. Reg. 66664 (Gila chub).  The 2009 CNOR reveals that while the

25  Southwest Region of FWS was busy listing no new species under the ESA, nationwide, the

26

27  species versus subspecies, but rather defines "species" to include "any subspecies of fish or
    wildlife or plants, and any distinct population segment of any species of vertebrate fish or
28  wildlife which interbreeds when mature."  16 U.S.C. § 1532(16).

9

1  Secretary allowed approximately 250 other species to continue to languish unprotected on

2  the candidate list.  See 74 Fed. Reg. at 57804.

3  **CLAIM FOR RELIEF**

4  38.     The allegations of all preceding paragraphs of this Complaint are incorporated

5  herein by reference.

6  39.     The ESA allows the Secretary to issue a 12-month finding that the listing of a

7  species is "warranted, but precluded" only if promulgation of the final regulation listing the

8  species is: 1) precluded by other higher priority pending proposals to determine whether

9  any species is an endangered or threatened species; *and* 2) the Secretary is making

10  expeditious progress to add species to the lists of threatened and endangered species.

11  40.     The Secretary's 2009 "warranted, but precluded" finding for the Jumping

12  Mouse fails to show either of these two requisite prongs of the legal test.  Specifically, the

13  Secretary's 2009 "warranted, but precluded" finding fails to demonstrate that the Secretary

14  is taking listing actions on any significant number of species with a higher listing priority

15  than that assigned to the Jumping Mouse or that the Secretary is making expeditious

16  progress in listing or delisting species pursuant to the ESA.

17  41.     Accordingly, the Secretary's 2009 "warranted, but precluded" finding for the

18  Jumping Mouse is arbitrary, capricious, and otherwise contrary to the ESA within the

19  meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A).  The

20  Secretary's failure to list the Jumping Mouse as either a threatened or endangered species

21  pursuant to the ESA consequently constitutes agency action unlawfully withheld or

22  unreasonably delayed under the APA, 5 U.S.C. § 706(1).

23  **PRAYER FOR RELIEF**

24  WHEREFORE, Plaintiff WildEarth Guardians requests that this Court enter

25  judgment providing the following relief:

26  (A)     A declaration that the Secretary violated the ESA and APA by issuing an

27  unlawful "warranted, but precluded" 12-month finding on Guardians' petition to list the

28  Jumping Mouse as a threatened or endangered species;

10

1    (B)    An injunctive order requiring the Secretary to withdraw his unlawful

2    "warranted, but precluded" finding and issue a new finding by a date certain;

3    (C)    An order awarding Guardians its costs of litigation including reasonable

4    attorneys' fees as provided by the ESA, 16 U.S.C. § 1540(g), and/or the Equal Access to

5    Justice Act ("EAJA"), 28 U.S.C. § 2412; and

6    (D)    Such other further relief as the Court deems just and proper.

7

8    Respectfully submitted this 15th day of July, 2010,

9

10    s/ Melissa Anne Hailey

11    *Attorney for Plaintiff*
*WildEarth Guardians*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28